[Cite as *In re C.S.*, 2017-Ohio-4345.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: C.S.
    N.S.

C.A. Nos.    16CA010989
                16CA010990


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    15JC47221
               15JC47222

DECISION AND JOURNAL ENTRY

Dated: June 19, 2017

---

SCHAFER, Presiding Judge.

{¶1} Appellant M.S. ("Mother") appeals the judgment of the Lorain County Court of Common Pleas, Juvenile Division, that adjudicated her children neglected and dependent and placed them in the legal custody of G.B. and A.B. ("Paternal Cousins"). This Court reverses and remands.

I.

{¶2} Mother is the mother of C.S. (d.o.b 6/5/12) and N.S. (d.o.b 12/14/14). D.C. ("Father") was considered to be the biological father of the children for purposes of this case, although it is unclear from the record whether he ever established paternity as to all the children. For ease, this Court will accord him the status of father. In any event, he is not a party to this appeal.

{¶3} On December 1, 2015, Lorain County Children Services ("LCCS") filed a complaint alleging C.S., N.S., and two older siblings[1] to be dependent and neglected children based on allegations that near the end of September 2015, Mother dropped them off at a relative's home without adequate supplies and did not return to retrieve them. The complaint further alleged that Mother, who had 12 children and was pregnant with her 13th, has a history of depending on others to care for her children. Also allegedly, Mother has significant mental health issues, is unemployed, and although she has independent housing, her apartment is reportedly cluttered, infested with bed bugs, and contains no food. The children allegedly found their way into Father's physical custody and care. Because the caseworker was unable to meet with Mother to try to formulate a plan for the children, the agency filed its complaint. The juvenile court issued predispositional interim orders, placing A.C. and Na.S. in the physical custody of Father, and C.S. and N.S. in the physical custody of Paternal Cousins.

{¶4} The juvenile court originally scheduled the cases for adjudication and disposition on January 7, 2016. Those hearings were continued until January 29, again until February 16, and finally until April 13, 2016. None of the scheduling entries indicated the reasons for the continuances.

{¶5} On April 13, 2016, the magistrate purported to hold the adjudicatory and dispositional hearings regarding the four children. All attorneys and parties were present except for Mother. Mother had shown up at the Justice Center, but instead of going to the floor on which the juvenile court was located and reporting to the magistrate's courtroom, she went to the Prosecutor's office on another floor with the intent to resolve her multiple outstanding warrants

---

[1] The older siblings are not subjects of this appeal. To the extent that information about them is relevant to this appeal, this Court will refer to them as A.C. and Na.S.

for failure to pay child support. She was immediately arrested on the warrants and placed in a holding cell in the basement of the Justice Center. When Mother's attorney learned of Mother's whereabouts approximately 30 minutes later and informed the magistrate, the magistrate presumed that Mother would request a continuance of the adjudication and disposition and sua sponte denied any presumptive request. Mother's attorney was able to consult with Mother in the holding cell prior to the hearing.

{¶6} The parties present at the hearing had apparently entered into an agreement, whereby A.C. and Na.S. would remain with Father, while C.S. and N.S. would be placed in the legal custody of Paternal Cousins. Mother did not sign the agreement, and her attorney asserted that she would only agree to protective supervision to the agency regarding one of the children who is not a subject of this appeal. There is nothing in the record to indicate that Mother stipulated to a finding that the children were dependent and/or neglected.

{¶7} Only the agency caseworker testified at the hearing. When LCCS presented its very brief case-in-chief, it immediately elicited evidence in support of its assertion that the various dispositions to which all parties except Mother had agreed were in the best interest of the children. The guardian ad litem for the children briefly summarized her report, speaking only as to disposition, and agreeing that the dispositions to which all parties except Mother had agreed were in the best interest of the children.

{¶8} After the statement by the guardian, the magistrate "adopt[ed] the entries as agreed to by the parties present and testified to as the parties absent." It is unclear what these entries are, as the only documents in the record signed by any parties are (1) a signature page appended to the Magistrate's Decision and containing the heading "Approved and a Copy Received By:", signed by the guardian ad litem, counsel for LCCS, Father, Father's attorney, and

Paternal Cousins, and (2) a statement of understanding regarding legal custody, signed by Paternal Cousins. Continuing on the record at the hearing, the magistrate addressed each older child separately, first adjudicating the child dependent and neglected, and then concluding that the disposition to which most parties had agreed was in the best interest of the child. The magistrate addressed C.S. and N.S. together, first adjudicating them dependent and neglected, and then finding that placing them in the legal custody of Paternal Cousins was in their best interests.

{¶9} The magistrate issued a decision reiterating these findings and orders. Although the decision states that the magistrate expressly adjudicated the children neglected and dependent, and then proceeded to dispositional hearing, it is apparent that the magistrate and parties present believed that the only issue before the court was disposition, and the hearing proceeded accordingly.

{¶10} The trial court adopted the magistrate's decision the same day, although the judge's judgment stated that legal custody of C.S. and N.S. was granted to Father. Also on the same day, the juvenile court issued a journal entry, presumably for education purposes, adjudicating the children neglected and dependent, awarding legal custody to Paternal Cousins, and directing the Lorain Board of Education to bear the costs of the children's education. Five days later, the juvenile court issued a journal entry, citing Civ.R. 60(B) and amending its prior judgment to reflect that it awarded legal custody of C.S. and N.S. to Paternal Cousins. As no party had filed a motion for relief from judgment, it appears that the juvenile court intended to correct a clerical mistake pursuant to Civ.R. 60(A).

{¶11} Mother filed timely objections and supplemental objections to the magistrate's decision. LCCS responded in opposition. The juvenile court held a hearing on Mother's

objections, allowing counsel to present argument. The juvenile court issued a judgment overruling Mother's objections and adhering to its prior order. Mother timely appealed and raises two assignments of error for review.

II.

**Assignment of Error I**

**It is plain error, that there is insufficient evidence presented at trial to support a court finding by clear and convincing evidence that the minor children are neglected and dependent children, and/or alternatively, it is ineffective assistance of counsel for [Mother's] trial counsel not to object and protect the issue for appellate review.**

{¶12} Mother argues that the juvenile court committed plain error by adjudicating the children dependent and neglected, as there was insufficient evidence to support the adjudications. In the alternative, she argues that trial counsel was ineffective for failing to file objections on the basis that the adjudications were not supported by sufficient evidence. Because it is clear from the transcript that the juvenile court failed to conduct an adjudicatory hearing prior to awarding custodial dispositions, this Court sustains the first assignment of error on the basis of plain error.

{¶13} To date, this Court has declined to determine whether the criminal or civil plain error standard is applicable to dependency, neglect, and abuse cases. *In re S.G.*, 9th Dist. Summit No. 27428, 2015-Ohio-2503, ¶ 11, citing *In re D.S.*, 9th Dist. Summit No. 24619, 2009-Ohio-3167, ¶ 10. Nor need we do so in this case, as the trial court's error was so egregious as to warrant reversal under either the criminal or civil standard.

> In the criminal context, plain error does not exist unless it can be said that but for the error, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 57. The civil plain error standard may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging

the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

(Internal quotations omitted.) *In re S.G.* at ¶ 11.

{¶14} After the juvenile court has adjudicated a child as dependent, neglected, or abused, it may then issue one of five dispositional orders regarding the child, including placing the child in protective supervision, committing the child to the temporary custody of the agency, awarding legal custody, placing the child in a planned permanent living arrangement, or committing the child to the permanent custody of the agency. R.C. 2151.353. Accordingly, it is the adjudication which gives rise to the juvenile court's continuing jurisdiction to issue dispositional orders. *In re F.B.*, 9th Dist. Summit No. 27762, 2016-Ohio-3434, ¶ 10. In the absence of clear and convincing evidence that the child is dependent, neglected, or abused, the juvenile court must dismiss the complaint and has no authority to issue an award of custody. R.C. 2151.35(A); Juv.R. 29(F)(1).

{¶15} If the juvenile court has adjudicated the child dependent, neglected, or abused, however, it must then hold a separate dispositional hearing. R.C. 2151.35(B)(1). While the dispositional hearing may take place immediately after the adjudication, it must still be distinct from the adjudicatory hearing. *Id*. Given the statutory scheme, it is clear that the juvenile court may neither commingle the adjudicatory and dispositional hearings, nor proceed to disposition without first having finalized the adjudication. Furthermore, an adjudication that a child is dependent, neglected, or abused must be based on evidence of such as of the date the complaint was filed, not as of the date of the adjudicatory hearing. R.C. 2151.23(A)(1).

{¶16} LCCS alleged that the children were "dependent" in that:

[they were] homeless or destitute or without adequate parental care, through no fault of the child[ren]'s parents * * *; they lack[ed] adequate parental care by reason of the mental or physical condition of the child[ren]'s parents * * *; [or]

[their] condition or environment [was] such as to warrant the state, in the interests of the child[ren], in assuming the child[ren]'s guardianship[.]

R.C. 2151.04(A)/(B)/(C). The agency further alleged that the children were "neglected" in that:

[they] lack[ed] adequate parental care because of the faults or habits of the child[ren]'s parents * * *, [or] [their] parents * * * neglect[ed] the child[ren] or refuse[d] to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child[ren]'s health, morals, or well being[.]

R.C. 2151.03(A)(2)/(3).

{¶17} In this case, the juvenile court purported to hold an adjudicatory hearing prior to proceeding to disposition. However, a review of the record indicates that the trial court and parties present proceeded directly to disposition, without first presenting any evidence to establish that the children were dependent and neglected. The magistrate's findings of facts as to adjudicatory issues merely reiterate the allegations in LCCS's complaint, despite the lack of such evidence or any stipulation on the record.

{¶18} The evidence adduced at the very short hearing was as follows. After asserting that she did not believe that Mother could provide care for the children "at this time,"[2] the first evidence elicited by LCCS of the caseworker was whether the dispositions agreed upon by all parties except Mother were in the best interest of the children. LCCS then presented evidence of the reasonable efforts it believed it had made to prevent the ongoing removal of the children. The caseworker further emphasized how well C.S. and N.S. were doing in the care of Paternal

---

[2] This Court is further concerned about the length of time it took for the juvenile court to hear these matters. R.C. 2151.28(A)(2) requires the juvenile court to hold the adjudicatory hearing within 30 days after the complaint is filed. R.C. 2151.35(B)(1) requires the juvenile court to hold the dispositional hearing not more than 90 days after the complaint is filed. Although the statutory scheme allows for short extensions of time for good cause, it is troubling that the juvenile court failed to schedule these matters for hearing until 133 days after the filing of the complaint, particularly in light of the lack of any explanation in the record for such a significant extension beyond that permitted by statute.

Cousins, who were active in addressing C.S.'s behavioral and mental health issues and engaging with the children's service providers. Although Father's counsel later elicited testimony by the caseworker that in September 2015, Mother had dropped off the children without adequate supplies with a relative, who gave the children to a grandmother, who gave them to Father, there was no explanation of how this series of events, without more, gave rise to dependency or neglect.

{¶19} In the absence of an adjudicatory hearing, it is axiomatic that the outcome of these proceedings would have been different. Moreover, any dispositional order in the absence of jurisdiction premised on a legitimate adjudication constitutes a manifest miscarriage of justice. Indeed, the procedure undertaken by the juvenile court impugns the legitimacy of the statutorily mandated judicial process. Accordingly, irrespective of the standard applied, the juvenile court committed plain error in rendering its adjudicatory and dispositional orders in this case. Mother's first assignment of error is sustained as it raises plain error. All remaining issues implicated by this assignment of error are rendered moot, and we decline to address them.

### Assignment of Error II

**The court erred, abused its discretion and violated [Mother's] procedural due process rights in not continuing the scheduled hearing and/or [Mother's] trial counsel was ineffective in not requesting that Mother be transported to the court room to participate in the hearing.**

{¶20} Mother argues that the juvenile court erred by failing to continue the scheduled adjudicatory and dispositional hearings in her absence. In the alternative, she argues that counsel was ineffective for failing to request that Mother be transported from her holding cell to the courtroom to participate in the hearings. Based on our resolution of the first assignment of error, Mother's second assignment of error has been rendered moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶21} Mother's first assignment of error is sustained. We decline to address the second assignment of error. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.


<u>APPEARANCES:</u>

JAMES V. BARILLA, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.